Honorable James C. Scott State Senator Route 1, Box 82A Warren, Arkansas 71671
Dear Senator Scott:
This is in response to your request for an official opinion on the following questions:
 1. When a State Agency awards an aerial services contract to an individual or a company, must the pilots who fly under these contracts possess a commercial pilot's certificate?
 RESPONSE: In attempting to answer your questions in this regard, the Federal Aviation Administration (FAA) was contacted. That federal agency gives an unequivocal "yes" to answer the question of whether or not an individual under contract with the State and flying for hire must have a commercial pilot's license. Federal Aviation regulation 61.118 (see attached) sets out the limitations for a private pilot without a commercial license.
 Federal Aviation Regulation 61.139, however, clearly indicates that in order to fly for hire under the circumstances which you indicate, a pilot must have a commercial license. (See attached FAR 61.139(b)).
 2. Under what circumstances, if any, can low level patrol flying be done without a waiver?
 RESPONSE: Under Federal Aviation Regulation 91.2 it is clear that the Administrator may issue a certificate of authorization authorizing deviations from the requirements limiting low level flying. (See attached FAR 91.2). However, under 91.2 any aircraft carrying persons or property for compensation or hire is not eligible for such a waiver. Yet, FAR 91.63 which specifically discusses waivers, indicates that the Administrator may issue a certificate of waiver authorizing the operation of aircraft and deviation from any rule of this subpart if he finds that the proposed operation can be safely conducted under the terms of that certificate of waiver. (See FAR 91.63 attached).
 FAR 91.79 sets out the minimum safe altitudes for flying aircraft and gives the parameters for which exceeding said altitudes would require a waiver. (See attached FAR 91.79).
 3. Under what circumstances, if any, can restricted category aircraft (i.e., crop dusters) be used for patrol work?
 RESPONSE: In speaking to the FAA authorities on this question, it was revealed that crop dusters may indeed be used as aircraft for hire. In fact, the feeling seems to be, by the FAA, that a crop duster's purpose is to get from point A to point B. Therefore, to use them for the purpose of patrol work would be consistent with their design. Federal Aviation Regulation 91.39 controls this question. (See attached).
 4. To protect the public agencies, is there any requirements that aerial contractors have liability insurance? If so, is the level of insurance specified?
 RESPONSE: In my research of this question I could find no regulations that would require liability insurance. In my discussion with the authorities at the FAA, I have learned that the Department of Transportation does not require that liability insurance be acquired by persons flying for hire to cover the general public.
 5. Are there any legal restraints on federally funded agencies, such as the National Guard, providing aerial contract services in competition with private services?
 RESPONSE: The National Guard is limited only by federal policies and procedures in the use of its aircraft for any given purposes. There is no apparent State law that would prohibit the National Guard from providing a flight service for any State agency. In fact, the Guard can and often does use its aircraft to assist law enforcement agencies as part of a task force.
National Guard Regulation 735-12 requires National Guard Bureau approval of its aircraft for aiding any civil operation. It specifically prohibits use of its aircraft to compete with private or commercial enterprises. Therefore, there is no danger that the Guard would compete with private enterprises for State aerial contracts.
It is my sincere hope that the answers provided to the questions you have posed have been helpful to you. It must be understood there are variables for some of the questions you raised. However, the answers given are to the best of my knowledge based upon the research done for the issues you have raised. It is, therefore, my official opinion.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Jerome T. Kearney.